Argued and submitted November 8, 1996, rules invalidated April 29, 1997

In the Matter of the Amendment of
Rules OAR 345 Division 50 Regarding Site
Suitability for Radioactive Waste Disposal.

FREMONT LUMBER COMPANY
and Kerr-McGee Corporation,
*Petitioners,*

*v.*

ENERGY FACILITY SITING COUNCIL,
*Respondent,*

*and*

DON'T WASTE OREGON SITING COUNCIL
and Lloyd K. Marbet,
*Intervenors.*

(EFSC 330 000; SC S43007)

936 P2d 968

Michelle B. Corash, of Morrison & Foerster, San Francisco, argued the cause for petitioners. With her on the briefs were Gail L. Achterman and Scott J. Kaplan, of Stoel Rives Boley Jones & Grey, Portland, and Mark P. Reeve, of Reeve & Reeve, Portland.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for intervenors.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, and Durham, Justices.*

GILLETTE, J.

---

* Graber, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

In this administrative law case, petitioners challenge amendments to two Energy Facility Siting Council (EFSC) rules pertaining to the siting of radioactive waste disposal facilities.[1] Petitioners contend that, in adopting the rule amendments, the EFSC both exceeded its statutory authority and failed to comply with the applicable rulemaking procedures. We hold that the amended rules are invalid for failure to include a proper fiscal impact statement.

Before the enactment of the challenged amendments, EFSC rules barred the siting of radioactive waste disposal facilities within a "500-year flood plain of a river," OAR 345-50-060(2), as "determined and mapped by the U.S. Army Corps of Engineers," OAR 345-50-050(2). In October 1995, the EFSC amended those rules in two significant ways. First, it broadened the prohibition on siting within the 500-year flood plain of a river in OAR 345-50-060 to include the flood plains of a stream, creek, or *lake*:

> "In order to issue a site certificate for a waste disposal facility, *or to carry out an arrangement with an agency of the federal government to clean up waste and contaminated material pursuant to ORS 469.559(2),* the Council must find that the site is suitable for disposal of such wastes, and the amount thereof, intended for disposal at the site. A site is *not* suitable if it is ~~net~~ located in:
>
> "(1)   An area determined by the Council to be subject to surface water erosion over the projected life of the facility. In reaching this determination, the Council shall consider geological evidence of historical erosion, ancient shorelines, stream beds and cutting due to floods.
>
> "(2)   The 500-year flood plain of a river, *stream, creek or lake, taking into consideration the area determined to be potentially subject to erosion within the lifetime of the facility.*"

---

[1] Petitioners sought direct review by this court as provided by ORS 469.490 (validity of any rule adopted by the EFSC may be determined only on a petition to the Supreme Court filed within 60 days after the date the rule becomes effective). Pursuant to that statute, our review is controlled by the standards set forth in ORS 183.400.

(*Italics* indicates new text, ~~strikeout~~ indicates deleted text.)

Second, the EFSC modified OAR 345-50-050(2) to indicate that the siting ban applies to *any* 500-year flood plain that can be identified, based on reliable scientific evidence, not just those that have been mapped by the Army Corps of Engineers:

> " '500-Year Flood Plain' means the most current estimate of the extent of a 500-Year flood as determined and mapped by the U.S. Army Corps of Engineers, *if such estimate is readily available. In the event the Corps has not produced such a map, the Council may rely on other analysis based upon reliable scientific evidence. Such reliance by the Council will consider criteria and methodologies used by the U.S. Army Corps of Engineers.*"

(*Italics* indicates new text.)

Petitioners challenge the rule amendments on procedural and statutory grounds. We begin with the procedural challenges, both of which assert deficiencies in the EFSC's notice of proposed rulemaking. *See Planned Parenthood Assn. v. Dept. Of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984) (stating that it is appropriate to consider procedural arguments in a rule challenge review before addressing substantive law issues).

ORS 183.335 provides notice and comment procedures for the adoption, amendment, and suspension of administrative rules. A subparagraph of that statute, ORS 183.335(2)(b)*(C)*, directs that a notice of an agency's intent to adopt, amend, or repeal a rule include "a statement of the need for the rule and a statement of how the rule is intended to meet that need." Petitioners first argue that the EFSC failed to comply with the "statement of need" requirement at ORS 183.335(2)(b)(C).

The EFSC included a statement of need in its notice. That statement provided:

> "It has been brought to the attention of the Oregon Department of Energy and Environmental Quality that a siting standard of the Oregon Energy Facility Siting Council is unclear. The statute prohibits radioactive waste disposal in or adjacent to an area potentially subject to river or

creek erosion or within a 500 year floodplain. The rule adopted pursuant to the statute specified those areas mapped by the U.S. Army Corps of Engineers as the definition of a 500 year flood plain. This was meant as a clarification, not limitation. This rulemaking will clarify that the requirement applies to any area determined to lie within a 500 year flood plain."

Petitioners nonetheless argue that, instead of demonstrating a *legitimate* need for a rule change, the statement "bootstraps" the agency into an illusory need—a need for "clarification"—by finding an ambiguity in the existing rules where none, in fact, exists. Petitioners argue, in other words, that, because the statement relies on what petitioners claim is a nonexistent need, it fails to meet the requirements of ORS 183.335(2)(b)(C) and is invalid.

ORS 183.335(2)(b)(C) contains only the sparest description of what it requires: The agency is to "state" that a particular "need" exists and "state" how the rule is intended to meet that "need." Petitioners' argument, *viz.*, that the agency's statement is invalid because it is premised on a need that does not exist, thus is a subset of the larger issue: How are we to determine whether a statement of need meets the requirements of ORS 183.335(2)(b)(C)?

Ultimately, the validity of any particular statement of need must be measured against the legislature's intent in requiring a statement of need in the first place. Here, the legislature's purpose in enacting ORS 183.335(2)(b)(C) is not clear from the text or context of the provision itself. We know that the legislature wants a statement of "need," but we cannot tell with confidence what would be enough of a statement. We turn, therefore, to legislative history. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993) (where legislative intent behind a statute is not clear from text and context alone, it is appropriate to resort to legislative history).

Legislative history indicates that subparagraph (2)(b)(C) of ORS 183.335 was adopted in response to concerns that, because the then-abbreviated APA notice provisions provided insufficient information about the agency's reasons for proposing a rule, interested persons often were unable to

submit data and arguments that were responsive to the agency's concerns in proposing the rule or rule change. *See generally* David B. Frohnmayer, *The Oregon Administrative Procedure Act: An Essay on State Administrative Rulemaking Procedure Reform*, 58 Or L Rev 411, 463-67 (1980) (describing history). By requiring the agency to articulate a need for a proposed rule, the legislature hoped to give interested parties the information that they needed to respond to the agency's concerns. *Ibid.*

It is evident from the foregoing that the legislative purpose in requiring a statement of need is not disserved, simply because that statement is premised on an erroneous perception of law or fact. Indeed, a statement's usefulness may lie precisely in the fact that it brings the agency's mistaken legal or factual premises to light, thereby giving interested persons valuable insight in crafting written and oral comments on the proposed rule.

■ We conclude that this second level of the *PGE* analysis makes the legislative intent clear: The "need" contemplated by ORS 183.335(2)(b)(C) is a need that the rule-proposing agency *perceives*. Because that meaning is clear, our analysis proceeds no further. *PGE*, 317 Or at 612.

It follows from our conclusion respecting the kind of "need" that must be shown that it is unnecessary for us to concern ourselves with petitioners' claim that the agency's asserted "need" for clarification does not exist. It is enough that the EFSC *perceived* a "need" for clarification and reported that perception in its statement of need.

■ In the light of the foregoing ruling, all that is left of petitioners' challenge is a suggestion that the EFSC's statement of need is not sufficiently detailed: While positing a need for clarification, the statement refers only to the Corps of Engineers' standard and, petitioners assert, "omits the actual portion of the statute that the rules were meant to 'clarify,' *i.e.*, that 'river' really meant river, creek, stream and lake." We note, however, that the text of the proposed rule was included elsewhere in the notice of proposed rulemaking and that, in the context of the notice as a whole, the agency's position—that the term "river" also needed clarification to include lakes and streams—is made sufficiently clear to

serve the purposes of ORS 183.335(2)(b)(C). There was no procedural error with respect to the agency's statement of need.

Petitioners argue, next, that the rulemaking notice failed to comply with the procedural requirement at ORS 183.335(2)(b)*(E)*. ORS 183.335(2)(b)(E) requires agencies to include in any notice of proposed rulemaking

"[a] statement of fiscal impact identifying state agencies, units of local government and the public which may be economically affected by the adoption, amendment or repeal of the rule and an estimate of that economic impact on state agencies, units of local government and the public. In considering the economic effect of the proposed action on the public, the agency shall utilize available information to project any significant economic effect of that action on businesses which shall include a cost of compliance effect on small businesses affected."

A rule may be invalidated if the promulgating agency fails to include a statement of fiscal impact in its notice of proposed rulemaking or includes a statement that does not comport with the requirements set out at subparagraph (2)(b)(E). *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 138, 881 P2d 119 (1994); *Dika v. Dept. of Ins. & Finance*, 312 Or 106, 110-11, 817 P2d 287 (1991). *See* ORS 183.335(11) (implying that noncompliance with ORS 183.335(2)(b)(E) will result in invalidation).[2]

The EFSC's notice of proposed rulemaking included the following statement of fiscal impact:

"*Fiscal and Economic Impact*: The proposed rules constitute part of the Energy Facility Siting Council (EFSC) standards for the siting of a radioactive waste disposal facility.

---

[2] ORS 183.335(11) provides:

"Notwithstanding the provisions of subsection (10) of this section, an agency may correct its failure to substantially comply with the requirements of subsections (2) and (5) of this section in adoption of a rule by an amending filing, so long as the noncompliance did not substantially prejudice the interests of persons to be affected by the rule. However, this subsection does not authorize correction of a failure to comply with subsection (2)(b)(E) of this section requiring inclusion of a fiscal impact statement with the notice required by subsection (1) of this section."

The existing and proposed rules require such a facility not be within the 500 year flood plain of a river.

*"Direct Impact on the Cost of Siting*: The cost to clean up a radioactive waste disposal site might or might not be affected by this rulemaking. For example, cleanup of radioactive wastes is currently being evaluated at the White King/Lucky Lass mines near Lakeview, Oregon. Costs of potential cleanup remedies, some of which could include floodplain disposal, are not yet known. However, the existing law requires such a facility not be located in the 500 year flood plain of a river. This rule amendment will not result in cleanup costs greater than those that might be incurred considering the existing ORS 469.375.

"* * * * *

*"Cost of Compliance on Business*: Unknown. For example, cleanup costs that might be incurred by private liable parties at the White King/Lucky [L]ass mines have not yet been estimated, and this rule amendment will not impose greater costs than those that might result under existing law."

Petitioners contend, in an argument that parallels their challenge to the agency's statement of need, that the above-quoted statement is premised on an erroneous proposition: That the contemplated amendments would merely clarify existing statutory law, *viz.*, ORS 469.375, and, as such, would not impose costs greater than those that would be imposed in any event. Petitioners argue that, in fact, the amendments will result in greater costs to businesses than those that would be incurred under the statutory standard.

In response, the EFSC adheres to the premise underlying its fiscal impact statement, arguing that the siting costs involved in radioactive waste cleanup are set by ORS 469.375 and have not been changed by the rule amendments. It contends, moreover, that, even if its premise is incorrect, that does not provide grounds for invalidation:

"ORS 183.335(2)(b)(E) does not include a demand for absolute correctness. * * * The law calls for the agency's understanding of the need for the rule, how it will be met and of its fiscal impact; the law does not demand that the notice prove accurate or require the rule be invalidated if it appears the notice included a mistake or a bad estimate."

We accepted a similar argument in the context of petitioners' statement of need challenge, above, 325 Or at 262—not as a general proposition applicable to *all* the notice requirements, but as a corollary to the specific legislative purpose behind ORS 183.335(2)(b)*(C)*. We identified that purpose from the text, context, and legislative history of that provision. However, the text of ORS 183.335(2)(b)(E,) as construed in *Don't Waste Oregon*, leads us to a different conclusion here.

In *Don't Waste Oregon*, this court considered a challenge to an EFSC rule that provided an exemption from an otherwise applicable rule that required entities seeking permission to build gas-fired power generating facilities to demonstrate a need for the power that they proposed to generate. In its notice of the proposed rulemaking, the EFSC included a statement of fiscal impact suggesting that adoption of the proposed rule would have no fiscal impact on most applicants for site certificates. When that statement was challenged, the EFSC argued that the proposed rule produced no substantial change in the law that it addressed. The challengers argued that the proposed rule's terminology did substantially change the legal issues that future site certificate applicants would face.

We addressed the challenge in *Don't Waste Oregon*, not by looking at whether the fiscal impact statement accurately reflected the EFSC's *understanding* of law, but by looking at whether the EFSC's understanding was *correct*. 320 Or at 139. We then held that the EFSC's understanding of existing law was correct (or, at least, not erroneous), because it was not inconsistent with the law's text, context, or any other source of law. Thus, although we ultimately concluded that the fiscal impact statement in *Don't Waste Oregon* was adequate, that case does stand for the proposition that, with respect to fiscal impact statements, an honest error about the law is, nevertheless, an error, and may render a statement of fiscal impact inadequate. The adequacy of a statement of fiscal impact must be assessed in terms of the *actual* fiscal impact of the proposed action, rather than the agency's *perception* of its impact.

With that proposition in mind, we consider the fiscal impact statement at issue in the present case. As indicated, the premise underlying the EFSC's assertion of no fiscal impact on businesses is similar (but not identical) to its rationale in *Don't Waste Oregon, viz.*, that the amended rule is substantially in line with a preexisting statute—ORS 469.375—and therefore "will not result in cleanup costs greater than those that might be incurred considering the existence of [that statute]." We consider the accuracy of that statement.

ORS 469.375 provides, in part:

"The [EFSC] shall not issue a site certificate for a waste disposal facility for uranium mine overburden or uranium mill tailings * * * unless, accompanying its decision it finds:

"(1) The site is:

"(a) Suitable for disposal of such wastes, and the amount of the wastes, intended for disposal at the site:

"(b) Not located in or adjacent to: .

"(A) An area determined to be potentially subject to river or creek erosion within the lifetime of the facility;

"(B) *Within the 500-year flood plain of a river, taking into consideration the area determined to be potentially subject to river or creek erosion within the lifetime of the facility*;

"* * * * *

"(2) There is no available disposal technology and no available alternative site for disposal of such wastes that would better protect the health, safety and welfare of the public and the environment."

(Emphasis added.)

◼ In the light of the text and context of ORS 469.375, which we find to be clear, we agree with petitioners that the rule amendment *expands upon*, rather than clarifies, the statutory prohibition. In particular, ORS 469.375(1)(b)(B) does not by its words extend to lakes—bodies of water that do not run in a course. The scope of the proposed rule thus is greater than the scope of the statute, as a matter of law. The

contrary suggestion in the statement of fiscal impact is erroneous, as a matter of law.

But does that conclusion necessarily undermine the EFSC's contention that the rules "will not result in cleanup costs greater than those that *might* be incurred considering the [existence of that statute]"? (Emphasis added.) Perhaps not. Based entirely on its statutory responsibility to ensure that a proposed disposal site is "suitable," ORS 469.375(1)(a), and to confirm that no "better" alternative site exists, ORS 369.375(2), the EFSC "might" reject any and all sites located within the flood plains of lakes, as well as rivers and streams, in any particular case, regardless of the existence of the challenged rules. *Technically*, therefore, it might be said that the EFSC's statement is not incorrect: Because it cannot say what it would have done in any particular case under the statute, it cannot say that any greater costs will be associated with the rule.

But the EFSC cannot escape responsibility for acknowledging that it is altering one legal standard by asserting that it *perhaps* would have taken the same position under some other source of law. By the proposed new rule, the EFSC is binding itself to a policy to which it previously was not bound—a policy that could involve additional costs to businesses seeking siting certificates because, by its terms, it expands the prohibition set out in ORS 469.375(1)(b)(B).[3] In view of that fact, it is incumbent on the EFSC to state clearly and affirmatively that costs might be involved, so that interested persons are alerted to that possibility. Here, the EFSC's affirmative statement that the rule will *not* impose greater cleanup costs will lull, rather than alert, fiscal concerns. That is precisely the evil that the statutory requirement of ORS 183.335(2)(b)(E) was intended to avoid. The agency's statement of fiscal impact is inadequate for purposes of ORS 183.335(2)(b)(E). It follows that the challenged

---

[3] Our observation in this regard is meant only as a comparison of the scope of the particular statutory provision and the proposed rules. It is not a ruling on whether the EFSC has the authority, derived from some source other than ORS 469.375(1)(b)(B), to promulgate the substantive content of the rules presently under consideration.

rules are invalid. ORS 183.335(2)(b)(E); ORS 183.335(11); ORS 183.400(4)(c); *Dika*, 312 Or at 110-12.

Rules invalidated.