Argued and submitted May 10, 2000, rules upheld January 11, 2001

In the Matter of
Amendment of Rules OAR 345 Division 50
Regarding Site Suitability for
Radioactive Waste Disposal.

FREMONT LUMBER COMPANY
and Kerr-McGee Corporation,
*Petitioners,*

*v.*

ENERGY FACILITY SITING COUNCIL,
*Respondent.*

(EFSC 330 000; SC S46401)

16 P3d 1147

Ellen Borgersen, of Morrison & Foerster LLP, San Francisco, argued the cause for petitioners. Scott J. Kaplan, of Stoel Rives LLP, Portland, filed the briefs. With him on the briefs were Gail Achterman, of Stoel Rives LLP, Portland, Mark P. Reeve, of Reeve Kearns, LLP, Portland, and Michèle B. Corash, of Morrison & Foerster LLP, San Francisco.

Philip Schradle, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Kulongoski, Leeson, and Riggs, Justices.*

RIGGS, J.

---

* Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case. De Muniz, J., did not participate in the consideration or decision of this case.

## RIGGS, J.

Petitioners challenge amendments to two rules, quoted below, of the Energy Facility Siting Council (EFSC) pertaining to the cleanup of uranium mine overburden.[1] Petitioners contend that, in adopting the rule amendments, EFSC exceeded its statutory authority. We uphold the challenged rules.

Before 1999, OAR 345-050-0060(2) barred siting a "waste disposal facility" either within an area subject to surface water erosion or within a 500-year flood plain of a river. ORS 469.300(30) defines a "waste disposal facility" as "a geographical site in or upon which radioactive waste is held or placed." ORS 469.300(22) defines "radioactive waste" and expressly excludes uranium mine overburden from the definition of radioactive waste.[2]

The challenged 1999 amendments effect two different, albeit related, things. First, EFSC amended OAR 345-050-0060 (as well as OAR 345-050-0010) to apply the siting prohibitions for waste disposal facilities to the cleanup of uranium mine overburden. Second, EFSC amended OAR 345-050-0060(2) to prohibit siting a waste disposal facility and carrying out the cleanup of uranium mine overburden within the 500-year flood plain of a stream or creek, as well as a river.

---

[1] OAR 345-05 0060 defines "uranium mine overburden," in part, as "earth and other material overlying natural deposits of uranium ore and removed to gain access to the ore."

[2] ORS 469.300(22)(a) defines "radioactive waste" as:

"[A]ll material which is discarded, unwanted or has no present lawful economic use, and contains mined or refined naturally occurring isotopes, accelerator produced isotopes and by-product material, source material or special nuclear material as those terms are defined in ORS 453.605. * * *"

ORS 469.300(22)(b), however, qualifies the foregoing definition:

"Notwithstanding paragraph (a) of this subsection, 'radioactive waste' does not include uranium mine overburden or uranium mill tailings, mill wastes or mill by-product materials as those terms are defined in Title 42, United States Code, section 2014, on June 25, 1979."

(Emphasis added.)

As amended, OAR 345-050-0060 provides, in part:

"~~In order~~ To issue a site certificate for a waste disposal facility, or to carry out a cooperative agreement or arrangement with an agency of the federal government to clean up radioactive waste, uranium mine overburden or contaminated material pursuant to ORS 469.559(2), the Council must find that the site is suitable for the type and amount of waste the applicant intends to dispose of ~~disposal of such wastes, and the amount thereof, intended for disposal~~ at the site. For purposes of this rule, uranium mine overburden means earth and other material overlying natural deposits of uranium ore and removed to gain access to the ore, if disposal of the material would result in an exceedance of any of the pathways in OAR 345-050-0035 as in effect on the date of this rule. A site is not suitable if it is ~~not~~ located in:

"(1)   An area determined by the Council to be subject to surface water erosion over the projected life of the facility. In ~~reaching~~ making this determination, the Council shall consider geological evidence of historical erosion, ancient shorelines, stream beds and cutting due to floods.

"(2)   The 500-year flood plain of a river, stream or creek, taking into consideration the area the Council determines under section (1) to be potentially subject to erosion within the lifetime of the facility."

(Strikeout indicates deleted text; underscoring indicates new text.) EFSC amended OAR 345-050-0010, in part, as follows:

"(2)   ~~It is also the purpose of these~~ The rules in this division ~~to~~ establish standards for the siting of ~~those waste disposal~~ facilities ~~which would only include~~ for disposal of wastes that were generated before June 1, 1981 through industrial or manufacturing processes ~~which~~ and that contain ~~only~~ naturally occurring radioactive isotopes. ~~It is the purpose of t~~ These rules ~~to~~ implement the requirements of ORS 469.375, 469.470 and 469.501 to 469.559 ~~469.507~~ for such waste disposal facilities. Except as provided in OAR 345-050-0060, t~~T~~hese rules do not apply to uranium mine overburden or uranium mill tailings, mill wastes or mill by-product material ~~which~~ that are subject to OAR Chapter 345, Divisions 092 and 095."

(Strikeout indicates deleted text; underscoring indicates new text.)

We review the challenged rules to determine whether they exceed EFSC's statutory authority. ORS 183.400(4)(b).[3] For the reasons that follow, we reject petitioners' arguments and uphold the challenged rules.

■        We first consider whether EFSC exceeded its statutory authority by extending the siting prohibitions in OAR 345-050-0060 to uranium mine overburden. Petitioners rely on ORS 469.375, which provides, in part:

> "The Energy Facility Siting Council shall not issue a site certificate for a waste disposal facility for uranium mine overburden or uranium mill tailings, mill wastes or mill by-product or for radioactive waste or radioactively contaminated containers or receptacles used in the transportation, storage, use or application of radioactive material, unless, accompanying its decision it finds:
>
> "(1)    The site is:
>
> "(a)    Suitable for disposal of such wastes, and the amount of the wastes, intended for disposal at the site;
>
> "(b)    Not located in or adjacent to:
>
> "(A)    An area determined to be potentially subject to river or creek erosion within the lifetime of the facility; [or]
>
> "(B)    Within the 500-year flood plain of a river, taking into consideration the area determined to be potentially subject to river or creek erosion within the lifetime of the facility[.]"

Petitioners point out that the standards for siting in ORS 469.375 apply to the siting of "radioactive waste" and that the statutory definition of "radioactive waste" expressly *excludes* uranium mine overburden. ORS 469.300(22)(b). They contend that EFSC lacks authority to apply the siting standards in ORS 469.375 to uranium mine overburden. Petitioners

---

[3] Petitioners sought direct review by this court. *See* ORS 469.490 (providing that Supreme Court may determine validity of rule adopted by EFSC on petition filed within 60 days after date rule becomes effective). Under ORS 469.490, the standards set out in ORS 183.400 control our review.

ORS 183.400(4) provides, in part:

"The court shall declare the rule invalid only if it finds that the rule:

"* * * * *

"(b) Exceeds the statutory authority of the agency[.]"

further argue that any other construction of those statutes renders meaningless the exclusion of uranium mine overburden in ORS 469.300(22)(b). EFSC argues that petitioners' focus on ORS 469.375 is too narrow and that other statutes — ORS 469.470, ORS 469.556, and ORS 469.559 — authorize it to promulgate the challenged amendments.

In considering the meaning of a statute, we first examine the text and context of the statute to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

ORS 469.559(2) *expressly* applies the siting standards in ORS 469.375 to a project to clean up uranium mine overburden:

> "The [EFSC] and the Office of Energy may enter into and carry out cooperative agreements and arrangements with any agency of the federal government implementing the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. section 9601 et seq., to clean up wastes and contaminated material, *including overburden, created by uranium mining* before June 29, 1989. Any such project need not obtain a site certificate from the council, but shall nevertheless comply with all applicable, relevant or appropriate state standards *including but not limited to those set forth in ORS 469.375 and rules adopted by the council and other state agencies to implement such standards.*"

(Emphasis added.) In addition to applying the siting standards to a project to clean up uranium mine overburden, ORS 469.559(2) exempts such a project from the need to "obtain a site certificate." As explained below, that exemption is important to resolving one aspect of petitioners' rule challenge.

ORS 469.320 generally prohibits construction of a waste disposal facility unless EFSC issues a site certificate.[4]

---

[4] ORS 469.320(1) provides:

"Except as provided in subsections (2) and (5) of this section, no facility shall be constructed or expanded unless a site certificate has been issued for the site thereof in the manner provided in ORS 469.300 to 469.563, 469.590 to 469.619, 469.930 and 469.992. No facility shall be constructed or operated except in conformity with the requirements of ORS 469.300 to 469.563, 469.590 to 469.619, 469.930 and 469.992."

The legislature has enacted procedures that govern the site certification process. *See, e.g.*, ORS 469.330 (requiring site certificate applicants to file notice of intent; requiring EFSC to give public notice); ORS 469.360 (requiring EFSC to evaluate site applications); ORS 469.370 (requiring EFSC to hold public hearings regarding site applications).

Although ORS 469.559(2) exempts projects to clean up uranium mine overburden from the site certification *process*, that statute nevertheless applies the *standards* for site certification to projects to clean up uranium mine overburden. In short, although projects to clean up uranium mine overburden are not required to comply with other statutes that govern site certification of a waste disposal facility, such projects *are* required to comply with the siting standards in ORS 469.375. The exclusion of uranium mine overburden from the definition of radioactive waste in ORS 469.300(22)(b) is consistent with that premise. Petitioners' argument to the contrary is not well taken.

We continue our analysis of whether EFSC has authority to apply, by rule, the siting standards in ORS 469.375 to the disposal of uranium mine overburden. In addition to ORS 469.559(2), ORS 469.556 authorizes EFSC to promulgate rules relating to the treatment, storage, and disposal of uranium mine overburden. That statute provides:

> "*The [EFSC] shall adopt rules governing* the location, construction and operation of uranium mills and uranium mill tailings disposal facilities and *the treatment, storage and disposal of uranium mine overburden for the protection of the public health and safety and the environment.*"

(Emphasis added.) Under that statute, EFSC has plenary authority to promulgate rules relating to the treatment, storage, and disposal of uranium mine overburden, as long as the rule is for the protection of the public health and safety, and the environment. We conclude that EFSC's broad rulemaking authority under ORS 469.556, together with its express authority under ORS 469.559(2) to apply the standards in ORS 469.375 to uranium mine overburden, authorize EFSC to apply, by rule, the siting standards in ORS 469.375 to the disposal of uranium mine overburden.

■     We turn to petitioners' argument that OAR 345-050-0060 is invalid, because it is not a "rule" within the meaning of ORS 183.310(8). *See* ORS 183.310(8) (defining "rule" as "any agency directive, standard, regulation or statement of general applicability"). Specifically, they argue that, because OAR 345-050-0060 applies to cooperative *agreements* or *arrangements* with federal agencies to clean up uranium mine overburden, it is not a rule of "general applicability." According to petitioners, in amending the rule, EFSC intended to alter the course of decision-making for only one site. We disagree with petitioners' argument.

OAR 345-050-0060 does not apply to just one cooperative agreement or arrangement. The rule applies to *any* such agreement or arrangement. Thus, the rule is one "of general applicability" within the meaning of ORS 183.310(8). The fact that OAR 345-050-0060 affects only one active project at any point in time does not keep the rule from being one of general applicability. *See* ORS 183.400(3)(a) (limiting judicial review of administrative rule to "[t]he rule under review"); *GTE Northwest, Inc. v. Public Utility Commission*, 321 Or 458, 464, 900 P2d 495 (1995) ("Judicial review of an agency's rule under ORS 183.400 is limited to a determination of whether the rule, as written, is valid[.]"). Here, if other uranium mine overburdens came into existence, the cleanup of those overburdens would be subject to the rule.

For the reasons discussed above, we hold that EFSC has the authority to apply the siting standards in OAR 345-050-0060 to the cleanup of uranium mine overburden.

■■     We next consider whether EFSC exceeded its statutory authority by broadening the prohibition on siting from the 500-year flood plain of a "river" to the 500-year flood plain of a "river, stream or creek." Petitioners first contend that, as amended, OAR 345-050-0060(2) violates ORS 469.375(1)(b)(B).[5] Second, petitioners contend that the rule violates ORS 469.310 and ORS 469.375(2), by eliminating a class of potential sites (*i.e.*, those within the 500-year flood

---

[5] The voters enacted paragraph (b) of ORS 469.375(1) through the initiative process. Or Laws 1985, ch 4. In interpreting such a statute, we look to the text and context of the statute to discern the intent of the voters who passed the initiative. *State v. Guzek*, 322 Or 245, 265, 906 P2d 272 (1995).

plain of a stream or creek) that might best protect the public and the environment. *See* ORS 469.310 (declaring policy of siting energy facilities "in a manner consistent with protection of the public health and safety"); ORS 469.375(2) (requiring EFSC to find, before approving site, that "no available alternative site * * * would better protect the health, safety and welfare of the public and the environment").[6] EFSC argues that ORS 469.470, ORS 469.556, and ORS 469.559 authorize its amendments to OAR 345-050-0060(2).

We conclude that ORS 469.556 provides EFSC with authority to prohibit the cleanup of uranium mine overburden within the 500-year flood plain of a river, stream, or creek. It is evident that the siting prohibition relates to the "treatment, storage and disposal of uranium mine overburden." ORS 469.556. The only remaining question is whether the prohibition is "for the protection of the public health and safety and the environment." *Id.* It is. The potential flooding of an area where radioactive material is stored obviously is relevant to the public health and safety, and the environment. Consequently, the prohibition is within the EFSC's authority under ORS 469.556.

Petitioners also argue that this court's decision in *Fremont Lumber Co. v. Energy Facility Siting Council*, 325 Or 256, 936 P2d 968 (1997) (*Fremont Lumber I*) requires us to sustain their challenge to OAR 345-050-0060(2). That argument is not well taken. In *Fremont Lumber I*, this court considered a challenge to the fiscal impact statement of EFSC's amendment to OAR 345-50-060 (subsequently renumbered OAR 345-050-0060), wherein EFSC broadened the prohibition on siting a waste disposal facility within the 500-year

---

[6] ORS 469.310 provides, in part:

"In the interests of the public health and the welfare of the people of this state, it is the declared public policy of this state that the siting, construction and operation of energy facilities shall be accomplished in a manner consistent with protection of the public health and safety and in compliance with the energy policy and air, water, solid waste, land use and other environmental protection policies of this state. * * *"

ORS 469.375(2) prohibits EFSC from approving a site unless it finds that:

"There is no available disposal technology and no available alternative site for disposal of such wastes that would better protect the health, safety and welfare of the public and the environment[.]"

flood plain of a river to the flood plain of a river, stream, creek, or lake. 325 Or at 259. The fiscal impact statement stated that, because the amendment merely clarified ORS 469.375, it would not impose costs greater than those that existing law would impose. This court held that the fiscal impact statement was inadequate because the rule amendment expanded on, rather than clarified, ORS 469.375. *Id.* at 266. Accordingly, this court invalidated the challenged rule. Notably, this court in *Fremont Lumber I* expressly declined to consider whether another statute grants authority to EFSC to promulgate a rule prohibiting siting within the 500-year flood plain of a river, stream, or creek. *Id.* at 267 n 3. That issue is central to this case.

■         Finally, petitioners argue that, by categorically prohibiting siting within the flood plains of creeks and rivers, OAR 345-050-0060(2) violates the statutorily mandated energy policy of protecting public health and safety. We disagree. EFSC cannot approve the disposal of uranium mine overburden *unless* it finds that a particular site is suitable, ORS 469.375(1)(a), *and* that there is no alternative site that would better protect public health, safety, and welfare, ORS 469.375(2). *See* ORS 469.559(2) (applying standards in ORS 469.375 to projects to clean up uranium mine overburden.) As we have discussed, EFSC acted within its authority when it promulgated a rule prohibiting the disposal of uranium mine overburden within the 500-year flood plain of a river, stream, or creek. Accordingly, EFSC cannot approve a site within such an area. The finding of no better alternative must be viewed only in the context of a site that meets the other standards of suitability.

In sum, we hold that EFSC acted within its statutory authority when it amended OAR 345-050-0010 and OAR 345-050-0060 to apply the siting criteria in OAR 345-050-0060 to the cleanup of uranium mine overburden. We also hold that EFSC acted within its statutory authority when it amended OAR 345-050-0060(2) to prohibit the disposal of uranium mine overburden within the 500-year flood plains of a stream or creek.

Rules upheld.