Argued and submitted November 1, 1993, judgment of the Tax Court affirmed
January 20, 1994

Dorothy SMITH,
*Appellant,*

*v.*

MULTNOMAH COUNTY
BOARD OF COMMISSIONERS,
*Respondent.*

(OTC 3329; SC S40152)

865 P2d 356

Gregory W. Byrne, Portland, argued the cause and filed the briefs for appellant.

Sandra N. Duffy, Assistant County Counsel, Portland, argued the cause and filed the brief for respondent. With her on the brief was Laurence Kressel, County Counsel for Multnomah County, Portland.

Roger Tilbury, Portland, argued the cause and filed the brief for *amicus curiae* plaintiffs in *Tilbury et al v. Multnomah County et al*, OTC No. 3368. With him on the brief was Roch Steinbach, Portland.

Before Carson, Chief Justice, and Peterson,[*] Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GILLETTE, J.

---

[*] Peterson, J., retired on December 31, 1993.

## GILLETTE, J.

In this property tax case, plaintiff taxpayer sought a refund, under the general refund statute, ORS 311.806,[1] of taxes imposed and collected in excess of the limits of Article XI, section 11b, of the Oregon Constitution (commonly known as "Measure 5").[2] The Tax Court held that two other statutes, ORS 305.583 and 305.587,[3] provide the exclusive means for obtaining such a refund. On *de novo* review, we agree and affirm the judgment of the Tax Court.

Plaintiff taxpayer owns real property in the City of Portland. The taxes assessed on that property for the fiscal year 1991-92 included $93.98 imposed for the repayment of Portland Development Commission urban renewal bonds.[4] On plaintiff's tax statement, that figure was represented as excluded from the property tax limits imposed by Measure 5. Plaintiff paid the taxes in full on November 15, 1991.

In September 1992, this court held in *City of Portland v. Smith*, 314 Or 178, 838 P2d 568 (1992), that taxes imposed for the repayment of urban renewal bonds are not exempt from the limits of Measure 5 under subsection (3)(a) of the measure, which exempts taxes imposed to pay off "bonded indebtedness authorized by a specific provision" of the Oregon Constitution.[5] Thereafter, in October 1992, plaintiff submitted a written request to defendant for a refund of the $93.98. In submitting that claim, plaintiff relied on the general refund statute, ORS 311.806(1)(c), which authorizes the refund of property taxes paid in excess of the

---

[1] For the relevant text of ORS 311.806, see *infra* at note 6. All references to statutes in this opinion are to the statutes in effect prior to the 1993 legislative session.

[2] Measure 5, enacted by the people in 1990, "limits the taxes that may be imposed on any property by limiting tax rates." *Coalition for Equit. School Fund. v. State of Oregon*, 311 Or 300, 310, 811 P2d 116 (1991).

[3] For the relevant text of these statutes, see *infra*, 318 Or at 306.

[4] The Portland Development Commission is the urban renewal agency of the City of Portland. *See generally* ORS ch 457 (relating to urban renewal).

[5] The City of Portland argued that its urban renewal bonds were authorized by Article IX, section 1c, of the Oregon Constitution. This court held that "Article IX, section 1c, of the Oregon Constitution is not a specific provision authorizing bonded indebtedness and therefore does not qualify for the exemption stated in Article XI, section 11b(3)(a), of the Oregon Constitution." *City of Portland v. Smith*, 314 Or 178, 193, 838 P2d 568 (1992).

legally chargeable amount through the excusable neglect of the taxpayer or as the result of a correctable error in the tax roll.[6] Defendant denied the request, and plaintiff filed a complaint in the Tax Court.

Plaintiff moved for summary judgment, arguing that she was entitled to a refund under ORS 311.806(1)(c) as a matter of law, because she paid the taxes either through her own excusable neglect or as the result of an error subject to correction under ORS 311.205. Defendant made a cross-motion for summary judgment arguing, among other things, that plaintiff's exclusive remedy lay in the provisions of ORS 305.583 and 305.587, which provide specifically for the refund of taxes imposed and collected in excess of the limits of Measure 5. The Tax Court granted defendant's motion, concluding that the specific provisions for obtaining a refund under ORS 305.583 and 305.587 preclude plaintiff from obtaining a refund under the general refund statute, ORS 311.806.

■ The question before us on appeal is whether, as the Tax Court concluded, the legislature intended the provisions of ORS 305.583 and 305.587 to serve as the exclusive means of obtaining a refund of taxes imposed and collected in excess of the limits imposed by Measure 5.[7] *See PGE v. Bureau of*

---

[6] ORS 311.806(1)(c) provides:

"(1) The county governing body shall refund to a taxpayer, out of the refund reserve account provided in ORS 311.807, or the unsegregated tax collections account provided in ORS 311.385, taxes on property collected by an assessor or tax collector pursuant to a levy of the assessor or of any taxing district or tax levying body or pursuant to ORS 311.255, plus interest thereon as provided in ORS 311.812, in the following cases:

"* * * * *

"(c) Whenever any person, through excusable neglect, or through error subject to correction under ORS 311.205 pays taxes on property in excess of the amount legally chargeable thereon, and then only in the amount of money collected in excess of the amount actually due[.]"

ORS 311.205 permits the correction of "errors or omissions in the roll," including clerical errors, ORS 311.205(1)(a), and "any other error or omission of any kind, so long as it is not a change in valuation judgment," ORS 311.205(1)(c).

[7] For purposes of this appeal, we assume, without deciding, that plaintiff would otherwise be entitled to a refund under ORS 311.806(1)(c). Thus, we assume that the payment of a tax imposed and collected in excess of the limits of Measure 5 would otherwise qualify for a refund as a payment, "[t]hrough excusable neglect, or through error subject to correction under ORS 311.205," of "taxes on property in excess of the amount legally chargeable thereon."

*Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) ("In interpreting a statute, the court's task is to discern the intent of the legislature."). As usual, we begin with the text and context of the statutes in question. *Ibid.* Context includes other related statutes. *Id.* at 611.

ORS 305.583(1) provides:

"Ten interested taxpayers may petition the Oregon Tax Court to determine the effect of the limits of [Measure 5] on any tax, fee, charge or assessment imposed by a unit of government. For purposes of this section, 'interested taxpayers' means persons who are subject to the tax, fee, charge or assessment in question."[8]

With regard to refunds, ORS 305.587 provides:

"(1) If in a proceeding commenced under ORS 305.583, the tax court finds that a challenged tax, fee, charge or assessment is subject to the limits of [Measure 5], the court may:

"(a) Order the government unit to make refunds to petitioners of any part of the challenged tax, fee, charge or assessment imposed and collected in excess of the limits of [Measure 5]. The court may not order refunds if the government unit previously had obtained a judgment of the tax court or the Oregon Supreme Court under ORS 305.589, that the tax, fee, charge or assessment in question was not subject to the limits of [Measure 5].

"* * * * *

"(2) If the court orders a unit of government to make refunds of any tax, fee, charge or assessment that was imposed and collected in excess of the limits of [Measure 5], the government unit shall do so out of the resources of the government unit. No refund so ordered shall be paid from the unsegregated tax collections account."

Proceedings to determine the effect of Measure 5 on a tax, fee, charge, or assessment also may be brought by local government units under ORS 305.585 (local government unit

---

[8] The Tax Court has held that the requirement of *ten* taxpayers in order to bring a petition under ORS 305.583 violates Article I, section 10, of the Oregon Constitution and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States. *Welch v. Unified Sewerage Agency*, 12 OTR 359 (1992). Thus, the Tax Court would not refuse jurisdiction of the claim if plaintiff alone had filed her claim for a refund under ORS 305.583(1) and 305.587. We express no opinion as to the correctness of the *Welch* decision.

may petition for determination regarding tax of another government unit) and 305.589 (local government unit may petition for determination regarding its own tax).[9]

We observe, as a threshold matter, that the legislature did not expressly indicate in the text of ORS 305.583 or 305.587 any intent to establish those statutes as the exclusive means of obtaining a refund of taxes imposed and collected in excess of the limits of Measure 5. Defendant argues, however, that such intent is expressed in ORS 305.580(1), which provides that "[t]he provisions of ORS 305.583, 305.585, 305.587 and 305.589 shall provide *the exclusive remedy* for determination of questions concerning the effect of the limits of [Measure 5] on taxes, fees, charges and assessments of units of government." (Emphasis supplied.) Defendant argues that the "exclusive remedy" limitation in ORS 305.580(1) unequivocally makes the refund provisions in ORS 305.583 and 305.597 exclusive. We do not agree.

By its terms, ORS 305.580(1) makes the proceedings in the Tax Court authorized by ORS 305.583 to 305.589 the exclusive means of obtaining a "determination of questions concerning the effect of the limits of [Measure 5] on taxes, fees, charges and assessments." Thus, in order to obtain a determination of the effect of Measure 5 on a particular tax, the appropriate party or parties must bring, in the Tax Court, one of the proceedings authorized by ORS 305.583, 305.585, or 305.589. Any other type of proceeding — *e.g.*, a declaratory judgment proceeding in circuit court — is barred by the "exclusive remedy" language of ORS 305.580(1). However, once the Tax Court has determined, in an appropriate proceeding, that a particular tax was imposed and collected in excess of the limits of Measure 5, the "exclusive remedy" language in ORS 305.580(1) does not specifically prohibit a taxpayer who was subjected to that excess tax from seeking a refund under the general provisions of ORS 311.806. ORS 305.580(1) does not mention refunds and does not purport to eliminate any otherwise appropriate use of the general refund

___

[9] A proceeding under ORS 305.589 is "a special proceeding in the nature of an ex parte proceeding in the absence of the intervention of a respondent in opposition to the petition." ORS 305.589(4). Subsection (6) of that statute permits "[a]ny elector, taxpayer or interested person or local government unit that may be affected by the tax, fee, charge or assessment that is the subject of the petition" to intervene. ORS 305.589(6).

statute, ORS 311.806. Thus, ORS 305.580(1) does not settle the exclusivity question presented by this case.

The text and context of ORS 305.583 and 305.587 do, however, provide significant insight into the legislative intent on that question. Indeed, as we shall explain, we conclude that the text and context of the statutes make clear the legislature's intent to establish ORS 305.583 and 305.587 as the exclusive means of obtaining a refund of taxes imposed and collected in excess of the limits of Measure 5.

As noted above, ORS 305.587(1)(a) authorizes the Tax Court to order a governmental unit to make refunds to the petitioners in a proceeding brought under ORS 305.583, if the court finds that the challenged tax is subject to the limits of Measure 5. ORS 305.*587(1)(a)* additionally provides, however, that the Tax Court may *not* order such refunds if either that court or this court already has determined, in an earlier proceeding brought by the governmental unit under ORS 305.*589*, that the challenged tax was *not* subject to the limits of Measure 5. Thus, if the governmental unit has obtained a favorable ruling in a proceeding under ORS 305.589, the tax court may not order refunds in a later proceeding under ORS 305.583 that results in a ruling unfavorable to the government unit.[10]

If ORS 311.806 were available as a means of obtaining a refund of taxes imposed and collected in excess of the limits of Measure 5, the latter part of ORS 305.587(1)(a) would have little effect: Once the later ruling was made that the challenged tax was *not* subject to the limits of Measure 5, an interested taxpayer still could obtain a refund. Assuming that the payment of a tax in excess of the limits of Measure 5 qualifies for a refund under ORS 311.806(1)(c) (*see supra* note 7), the county would have no choice but to issue the refund, inasmuch ORS 311.806(1) provides that the county "shall" issue the refund. A taxpayer would thus be able to

---

[10] As a practical matter, it may be that the scenario that the legislature anticipated in ORS 305.587(1)(a) would not occur. That is because, in a proceeding under ORS 305.589, statute provides that the court obtains jurisdiction over "the electors, taxpayers and other interested persons." ORS 305.589(5). If there were to be a later petition for a refund under ORS 305.583 regarding that same tax, it is at least arguable that the second action would be barred by claim preclusion. Even if that were so, however, we think that it is appropriate to use ORS 305.587(1)(a) as evidence of the legislature's intent regarding exclusivity.

circumvent the bar on refunds contained in ORS 305.587(1)(a) by seeking a refund from the county through ORS 311.806. We think that the legislature would not have intended to create such a "loophole." We conclude that the legislature intended instead for ORS 305.583 and 305.587 to provide the exclusive means of obtaining a refund of taxes imposed and collected in excess of the limits of Measure 5.

The foregoing conclusion is further supported by the well-established rule of statutory construction that a specific statute takes precedence over an inconsistent general statute related to the same subject. That rule is expressed in ORS 174.020, which provides:

> "In the construction of a statute the intention of the legislature is to be pursued if possible; and *when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it.*"

(Emphasis supplied.)

This court has restated that statutory rule as follows:

> "[W]here there is a conflict between two statutes, both of which would otherwise have equal force and effect, and the provisions of one are particular, special and specific in their directions, and those of the other are general in their terms, the special provisions must prevail over the general provisions[.]"

*State v. Preston*, 103 Or 631, 637, 206 P 304 (1922). In such a case, the specific statute is considered an exception to the general statute. *Colby v. Larson*, 208 Or 121, 126-27, 297 P2d 1073, 299 P2d 1076 (1956).

In applying the foregoing rule to this case,[11] the pivotal question is whether there is an inconsistency between the specific refund provisions in ORS 305.583 and 305.587 and the general refund provisions in ORS 311.806, from which we can infer the legislature's intent to make the provisions of ORS 305.583 and 305.587 exclusive with regard to the refund of taxes imposed and collected in excess of the

---

[11] As suggested in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993), it is appropriate to utilize the foregoing rule at the first (*i.e.*, text and context) level of statutory analysis, because that rule "bear[s] directly on the interpretation of the statutory provision in context."

limits of Measure 5. We conclude that there is such an inconsistency.

ORS 311.806 provides that a refund paid under that statute shall be paid by the county governing body "out of the refund reserve account provided in ORS 311.807, or the unsegregated tax collections account provided in ORS 311.385." ORS 311.806(1). The "unsegregated tax collections account" is the general account into which property tax moneys are deposited upon receipt and from which distributions are made by the county, according to an established ratio, to the various taxing units within the county. ORS 311.385; 311.390. The "refund reserve account" is a special account for the payment of refunds that the county may establish with funds from the unsegregated tax collections account. ORS 311.807. Thus, a refund paid under ORS 311.806 depletes, either immediately or ultimately, the unsegregated tax collections account. This practice results in the burden of the refund falling on all taxing units within the county, because payment of the refund reduces the general pool of property tax revenues available to all taxing units through the unsegregated tax collections account.

In contrast, ORS 305.587 provides that a refund ordered under that statute shall be paid by the governing unit that imposed or received the excess tax *out of its own resources*.[12] Moreover, the statute expressly provides that "[n]o refund so ordered shall be paid from the unsegregated tax collections account." Thus, the burden of a refund ordered under ORS 305.587 falls exclusively on the taxing unit that imposed or, in the case of an urban renewal agency, received the excess tax.

The facts of the present case may be used to illustrate the inconsistency between the two refund schemes. If plaintiff had filed a timely and successful proceeding under ORS 305.583 and obtained a refund under ORS 305.587, the Portland Development Commission would have had to pay that refund out of its own resources. If, on the other hand,

---

[12] ORS 305.583(2)(a) provides that a petition under that statute "shall name the government that imposes the tax, fee, charge or assessment, or, in the case of an urban renewal agency, that receives the taxes, as respondent." Thus, the government unit subject to the refund order under ORS 305.587 will be the unit that imposed or, in the case of an urban renewal agency, received the tax.

plaintiff were to obtain a refund under ORS 311.806, that refund would have to be paid by Multnomah County out of general property tax revenues available to all taxing units within the county. The inconsistency between the two schemes is that, under ORS 305.587, the Portland Development Commission bears the entire burden of paying the refund, while under ORS 311.806, all taxing units within Multnomah County bear the burden.

The foregoing inconsistency between the general refund statute, ORS 311.806, and the specific refund provisions of ORS 305.583 and 305.587, leads us to conclude that the legislature intended ORS 305.583 and 305.587 to provide the exclusive means of obtaining such refunds. Construing the refund provisions of ORS 305.583 and 305.587 as exclusive ensures that the burden of refunds consistently falls on the taxing unit responsible for imposing the excess tax. We hold that the legislature intended the specific provisions of ORS 305.583 and 305.587 to prevail over the general provisions of ORS 311.806 in cases involving the refund of taxes imposed and collected in excess of the limits of Measure 5. It follows that the Tax Court correctly granted defendant's motion for summary judgment.[13]

The judgment of the Tax Court is affirmed.

---

[13] *Amicus curiae*, plaintiffs in the case of *Tilbury v. Multnomah County*, which presently is pending in the Tax Court, argues that if ORS 305.583 and 305.587 provide the exclusive means of obtaining a refund of taxes imposed and collected in excess of the limits of Measure 5, those statutes are unconstitutional under the state and federal constitutions, because of the relatively short time period allowed for bringing proceedings under ORS 305.583. We decline to address the arguments of *amicus*, however, because plaintiff did not make any such arguments before the Tax Court. *See Christensen v. Murphy*, 296 Or 610, 612, 678 P2d 1210 (1984) ("As a general rule, parties to an appeal are restricted to the questions raised and preserved in the trial court."); *Senger v. Vancouver-Portland Bus Co.*, 209 Or 37, 43, 298 P2d 835, 304 P2d 448 (1956) ("where the constitutionality of an act has not been raised as an issue in the trial court, it will not be considered [on appeal]").