Argued and submitted May 18, 2004, affirmed March 23, petition for review denied July 26, 2005 (339 Or 66)

DUANE LEON KOENNECKE,
*Appellant,*

*v.*

Robert O. LAMPERT,
Superintendent,
Snake River Correctional Institution,
*Respondent.*

00-04-195M; A119254

108 P3d 653

Marc D. Blackman argued the cause for appellant. With him on the briefs were Kendra M. Matthews, and Ransom, Blackman, LLP.

Ryan P. Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Schuman and Ortega, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Petitioner appeals from the denial of post-conviction relief asserting four assignments of error. ORS 138.650. We affirm.

For the purposes of our discussion, the following facts are germane. Petitioner was convicted of driving while suspended in 1986. In 1995, he was charged and convicted of manslaughter, assault in the second degree, felon in possession of a firearm, and recklessly endangering another person. Those convictions were affirmed on direct appeal. *State v. Koennecke*, 157 Or App 723, 972 P2d 1231 (1998), *rev den*, 328 Or 418 (1999). In 2001, petitioner initiated this proceeding. The post-conviction court denied relief. Its judgment recites the following facts relevant to our consideration of the issues on appeal.

> "On September 9, 1995, the Petitioner and others were at an area known as Lee Falls in Washington County shooting an assortment of firearms. Petitioner maintained that the area in question was owned by his family or companies owned by his family. Petitioner had an encounter with another group of people including Robert Thomas Rodman (Rodman) and Wendy Lee Adams (Adams). Rodman objected to the use of firearms in the area and engaged Petitioner in a heated argument. Both Petitioner and Rodman had been drinking. At the time, Petitioner was carrying a .223 rifle and Rodman had a large stick. The argument became more heated and Petitioner warned Rodman to stay back and eventually fired a warning shot near Rodman's feet. The men then engaged in a physical altercation and Petitioner's rifle was dropped and then removed by others present.

> "The men were eventually separated and Petitioner went to his truck and tried to call the police but his cell phone would not work properly. Rodman then approached Petitioner's truck and punched Petitioner in the face and beat on his truck. With some coaxing from his group, Rodman then said that he was leaving and began to walk away with his group toward their vehicles. Petitioner got out of his vehicle, went to the river where his group had been shooting and retrieved a .22 rifle which he loaded with

a full clip. Petitioner then intercepted Rodman and confronted him. Petitioner maintains that Rodman came toward him in a threatening manner, an account disputed by some witnesses. Petitioner fired 23 rounds from the rifle with 14 striking Rodman, killing him and one round striking Adams in the lower abdomen. Other rounds narrowly missed others in Rodman's party.

"Petitioner was charged with Murder, Assault in the Second Degree with a Firearm, Felon in Possession of a Firearm * * * (two counts) and Recklessly Endangering Another (three counts). The Felon in Possession of a Firearm charges [were] based on a 1986 conviction for Driving While Suspended. The sentence imposed for the conviction in 1986 was a fine of $250 plus court costs and assessments.

"* * * During trial, Petitioner offered evidence regarding Rodman's psychological history and psychological condition at the time of the shooting. The trial court refused to admit the evidence because it was not known to the Petitioner at the time of the shooting and was deemed irrelevant. * * * Petitioner was convicted on a unanimous jury verdict of Manslaughter in the First Degree, Assault in the Second Degree with a Firearm, Felon in Possession of a Firearm (two counts) and Recklessly Endangering Another (three counts). * * *

"Petitioner was sentenced to 140 months for Manslaughter (a durational departure sentence), 70 months (Measure 11 mandatory minimum) consecutive, for Assault in the Second Degree, 18 months consecutive for each Felon in Possession of a Firearm (a dispositional departure sentence) and 6 months concurrent for each Recklessly Endangering.

"An appeal was taken and Petitioner was represented by Public Defenders * * *. Issues raised on appeal were:

"1. The trial court's exclusion of Rodman's mental health history to support Petitioner's theory of the case.

"2. The trial court's exclusion of a forensic autopsy and an ultimate forensic diagnosis of paranoid schizophrenia for Rodman.

"* * * * *

"6. The imposition of a $100,000 compensatory fine at sentencing without a showing of ability to pay.

"The appellate attorney did not raise as error on appeal, the imposition of departure sentences or consecutive sentences. In the Court of Appeals, the conviction was affirmed without opinion and review was denied by the Supreme Court."

(Record citations omitted.) Based on its findings and rulings, the post-conviction court entered judgment against petitioner on all claims for relief relevant to the validity of petitioner's conviction but granted relief regarding certain aspects of petitioner's sentence. As a result, the post-conviction court vacated the sentences imposed and remanded the matter to the trial court for resentencing. Respondent does not appeal. Petitioner appeals those issues that, if successful, will result in a new trial.

On appeal, petitioner argues in his first and second assignments of error that the post-conviction court erred in concluding that his prior conviction for driving while suspended was a felony and that trial counsel's concession of that fact did not constitute constitutionally inadequate assistance of counsel. The standards for determining inadequate assistance of counsel under the state and federal constitutions are similar. To prevail on a post-conviction claim of inadequate assistance of counsel under Article I, section 11, of the Oregon Constitution, petitioner has the burden of showing, by a preponderance of the evidence, facts demonstrating that his trial counsel failed to exercise reasonable professional skill and judgment and that counsel's failure had a tendency to affect the result of his criminal trial, that is, that petitioner suffered prejudice as a result. ORS 138.620(2); *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991); *Horn v. Hill*, 180 Or App 139, 149, 41 P3d 1127 (2002). To show that trial counsel's representation violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution, petitioner must show that counsel's acts or omissions were not the result of an exercise of reasonable professional judgment and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

Petitioner was charged with two counts of "felon in possession of a Firearm" under ORS 166.270 (1995).[1] The indictment alleged that petitioner's underlying felony arose from "having been previously convicted in Washington County, Oregon on August 4, 1986, of the felony of Driving While Suspended[.]" Petitioner argues that, because the 1986 conviction is an element of the crime of felon in possession of a firearm, trial counsel did not provide constitutionally adequate assistance when he conceded that the conviction was for a felony instead of a misdemeanor. Also, according to petitioner, because his felony status pervaded the trial from jury selection through sentencing, counsel's concession prejudiced him in that it had a tendency to affect the result of the trial on all counts for which he was convicted. In light of petitioner's arguments, we must initially determine whether, for the purposes of ORS 166.270 (1995), petitioner's 1986 conviction was a felony or a misdemeanor.

In 1986, a conviction for driving while suspended could be classified as a Class A misdemeanor or a Class C felony, depending on the basis for the suspension. ORS 811.175(4) (1985).[2] Petitioner pled guilty "to the charge of felony DWS" in exchange for the state dismissing two other charges, driving while revoked and driving while an habitual offender. Pursuant to the plea agreement, the trial court entered a judgment that provided that petitioner was "duly

---

[1] We apply the version of the statute in effect at the time petitioner committed his crimes. ORS 166.270 (1995) provided, in part:

"(1) Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any firearm, commits the crime of felon in possession of a firearm.

"* * * * *

"(3) For the purposes of this section, a person 'has been convicted of a felony' if, at the time of conviction for an offense, that offense was a felony under the law of the jurisdiction in which it was committed. Provided, however, that such conviction shall not be deemed a conviction of a felony if:

"(a) The court declared the conviction to be a misdemeanor at the time of judgment[.]"

[2] ORS 161.705(1) (1985) provided that, "[n]otwithstanding ORS 161.525 [describing when a crime is a felony], the court may enter judgment of conviction for a Class A misdemeanor and make disposition accordingly when * * * a person is convicted of any Class C felony."

convicted of the crime of driving while suspended (Class C felony) in Count 1." However, in imposing sentence and judgment on the conviction, the trial court ordered only that petitioner pay court fees and a $250 fine.

At the time, ORS 161.585(1) (1985) provided that, "[w]hen a crime punishable as a felony is also punishable by imprisonment for a maximum term of one year or by a fine, the crime *shall* be classed as a misdemeanor *if* the court imposes a *punishment other than imprisonment* under ORS 137.124(1)." (Emphasis added.) Further, ORS 161.585(2) (1985) provided, in part:

> "Notwithstanding the provisions of ORS 161.525, upon conviction of a crime punishable as described in subsection (1) of this section, the crime is a felony for all purposes until one of the following events occurs, *after which occurrence the crime is a misdemeanor for all purposes*:
>
> "* * * * *
>
> "(b) Without granting probation, the court imposes a fine."

(Emphasis added.)

The emphasized language in ORS 161.585(2) (1985) providing that, where a sentencing court imposes a fine without granting probation, the crime for which sentence is imposed "is a misdemeanor for all purposes" would appear to determine the issue of whether petitioner's 1986 conviction was a felony or misdemeanor. However, the subsequent amendment of the felon in possession statute, ORS 166.270, in 1989 also is relevant to the status of defendant's driving while suspended conviction for purposes of his felon in possession charge. By its terms, ORS 166.270 (1995), the statute under which defendant was charged in 1995, provided that a person would be considered to have been convicted of a felony if the offense was a felony under the law of the jurisdiction in which it was committed unless the court imposing sentence under the conviction "declared the conviction to be a misdemeanor."[3]

---

[3] ORS 166.270(3)(a) (1985) provided that, for purposes of the statute, a conviction for a felony "shall not be deemed a conviction of a felony if * * * [a]t the time of conviction, and pursuant to the law of the jurisdiction in which the offense

It follows that ORS 161.585(2) (1985) and ORS 166.270 (1995), when read together, potentially conflict and are susceptible to two reasonable interpretations. They could be interpreted to mean that defendant's 1986 conviction is a misdemeanor by operation of law pursuant to ORS 161.585(2) (1985) and that the 1989 amendment to ORS 166.270 did not alter that status because at the time that defendant was in possession of a firearm, the offense for which he had been convicted in 1986 was a misdemeanor rather than a felony as required by ORS 166.270. Alternatively, the statutes could mean, as applied to the facts in this case, that, because the court did not expressly declare petitioner's 1986 conviction to be a misdemeanor at the time of sentencing, petitioner is deemed to have been convicted of a felony for purposes of later-amended ORS 166.270. Under the latter interpretation, the sentencing court's declaration in 1986 that defendant was convicted of a felony would trump the provisions of ORS 161.585(2) (1985) and would mean that, for purposes of the charge against defendant in 1996 under ORS 166.270, defendant had previously been convicted of a felony.

Because the above issue presents an issue of legislative intent and neither of the above interpretations is implausible, we turn to an examination of the legislative history of ORS 166.270 (1989). *See State v. Stamper*, 197 Or App 413, 423, 106 P3d 172 (2005) (holding that because alternative, conflicting interpretations of ORS 163.425 were not implausible, resort to legislative history and ultimately to principles of statutory interpretation was required). Our review reveals the following. Late in the 1989 legislative session, House Speaker Vera Katz submitted House Bill 3470 after extended negotiations between the anti-regulation gun lobby and representatives of the law enforcement community. Among the provisions affected by the proposed bill was ORS 166.270. The proposed bill underwent a number of changes in the House and Senate Judiciary Committees. Senate Judiciary

occurred, the offense was made a misdemeanor by the type or manner of sentence actually imposed[.]" Between 1985 and 1995, ORS 166.270(3)(a) was amended to provide that a conviction "shall not be deemed a conviction of a felony if * * * [t]he court *declared* the conviction to be a misdemeanor at the time of judgment[.]" (Emphasis added.)

Committee, HB 3470, June 28, 1989, Ex A (Jolayne Hartz, *House Passes Gun Control Bill*, Statesman Journal, C1 (June 28, 1989)). Among those changes made by the Senate Judiciary Committee was to provide exceptions to the provision of the statute that a person is held to have been convicted of a felony if, at the time of conviction for an offense, that offense was a felony under the law of the jurisdiction in which it was committed. One of the exceptions adopted became what was codified as ORS 166.270(3)(a) (1989) and was in force at the time that petitioner committed his crimes. As codified, the relevant exception provided that, even though the offense for which the person was convicted constituted a felony, the conviction would not be deemed a conviction of a felony for the purposes of ORS 166.270 if "[t]he court declared the conviction to be a misdemeanor at the time of judgment."

The history underlying what became ORS 166.270(3)(a) (1989) makes clear the purpose of the exception. Legislative counsel informed the committee that, under then-existing law, there were two ways that a felony conviction could become a misdemeanor: when "the judge says at the time of sentencing, I think there is a special circumstance, and I am declaring it a misdemeanor" and when "regardless of whether the judge brings the subject up or not[,] * * * by operation of law by the type of sentence." Tape Recording, Senate Judiciary Committee, HB 3470, June 30, 1989, Tape 259, Side A (statement of Counsel Morris). Morris continued, "What the bill as it came to us did, would abolish things becoming misdemeanors by operation of law[.]" *Id.*[4] The bill passed out of committee with the above change to the exceptions and was eventually enacted. Or Laws 1989, ch 839, § 4.[5]

---

[4] The bill abolished the exception that permitted certain convicted persons—those whose sentences had made their convictions misdemeanors—to possess firearms.

[5] The prohibitions on possessing firearms, which applied to persons with felony convictions and persons with histories of mental instability, contained in the bill were intended to apply not only to those persons who would be convicted or mentally committed in the future, but to those persons with histories of felony convictions and mental commitments. Or Laws 1989, ch 839, §§ 4, 8, 13.

■ Even if the legislative history is not conclusive, rules of statutory construction point to the same result. Because the statutes are potentially in conflict, we are required to give effect to both, if possible. ORS 174.010. If ORS 161.585(2) is held to control, it will effectively eliminate the requirement of ORS 166.270(3)(a) that a court must declare the conviction to be a misdemeanor at the time of judgment. On the other hand, ORS 166.270(3)(a) (1995) can co-exist harmoniously with ORS 161.585(2)(b) (1985) if later-enacted ORS 166.270(3)(a) (1995) is considered as a legislatively intended exception to ORS 161.585(2)(b) (1985).[6] *See Smith v. Multnomah County Board of Commissioners*, 318 Or 302, 309, 865 P2d 356 (1994) (holding that where a specific statute is inconsistent with a general statute, the specific statute is considered an exception to the general statute). We conclude for all of the stated reasons that petitioner's 1986 conviction was a felony conviction for purposes of his conviction for felon in possession of a firearm. It follows that trial counsel's concession of that fact to the trial court was correct as a matter of law. Consequently, we reject petitioner's first two assignments of error.

■ In his third assignment of error, petitioner argues that the post-conviction court erred in concluding that his trial and appellate counsel's failure to challenge the exclusion of evidence regarding the victim's mental state did not constitute inadequate assistance of counsel. Trial counsel sought to introduce evidence of the victim's mental health history to corroborate petitioner's version of the events that occurred and to support his claim of self-defense. Ultimately, the trial court ruled the proffered evidence inadmissible, apparently because it deemed it irrelevant.[7] Petitioner argues that "as a matter of federal constitutional law, the

---

[6] In general, if two statutes are inconsistent, the later-enacted statute will prevail over the earlier-enacted statute. *See, e.g., Balzer Mch. v. Klineline Sand & Grav.*, 271 Or 596, 601, 533 P2d 321 (1975).

[7] The trial court explained in a letter opinion:

"The major problem in [petitioner's] theory is that [the victim's] state of mind and intent is only marginally at issue. The claim of self-defense allows defendant to present evidence of the words and conduct of the deceased on the date of that altercation to prove that defendant acted within the law in his response. The jury should not be concerned with deciding why [the victim] acted as described, or if he had acted irrationally on other occasions."

exclusion of this evidence violated due process and, had the offer been made under the defendant's constitutional rights, it could not have been rejected by the trial court."

The post-conviction court found that "[p]etitioner's trial attorney vigorously argued that the trial court should admit evidence of [the victim's] prior mental health history including expert testimony in that regard." The post-conviction court also concluded that "[t]he fact that he did not specifically raise it as a violation of Constitutional Due Process rights was not a factor in the outcome of the trial." Additionally, the post-conviction court found that "[p]etitioner's appellate attorney did raise, as an assignment of error, the issue of the trial court excluding testimony of [the victim's] mental condition[,]" but not as a due process issue.

Appellate counsel assigned error to the trial court's evidentiary ruling on direct appeal. Appellate counsel argued that

> "[t]he trial court's exclusion violated defendant's right to present his defense. *See State v. Mai*, 294 Or 269, 656 P2d 315 (1982) (fundamental right to present a defense includes the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies) citing *Washington v. Texas*, 388 US 14, 87 S Ct 1920, 18 L Ed 2d 1019 (1967)."[8]

As noted, this court affirmed the trial court's judgment without opinion and the Supreme Court denied petitioner's petition for review of that decision.

■ To obtain post-conviction relief, petitioner had the burden of demonstrating the inadequacy of his counsel *and* that he was prejudiced by counsel's failures or errors. For purposes of this assignment of error, the prejudice petitioner asserts is that, had counsel made a federal due process argument, it is more probable than not that he would have prevailed on appeal regarding the trial court's exclusion of the evidence that petitioner wanted to present. *See Blackledge v. Morrow*, 174 Or App 566, 570, 26 P3d 851, *rev den*, 332 Or

---

[8] *Washington v. Texas* involved a criminal defendant's Sixth Amendment and Fourteenth Amendment due process right to compulsory process at trial. 388 US at 17-18.

558 (2001). That argument requires us to explore the legal significance of a federal due process argument under the circumstances of petitioner's trial. As the United States Supreme Court explained in *Chambers v. Mississippi*, 410 US 284, 294, 93 S Ct 1038, 35 L Ed 2d 297 (1975):

> "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses on one's own behalf have long been recognized as essential to due process."

However, a defendant's right to present a defense under the Sixth and Fourteenth Amendments to the United States Constitution is not unfettered. *See, e.g., State v. Muyingo*, 171 Or App 218, 226-27, 15 P3d 83 (2000), *rev den*, 332 Or 431 (2001). In *State v. Beeler*, 166 Or App 275, 282-83, 999 P2d 497, *rev den*, 331 Or 244 (2000), we considered a similar issue on direct appeal and explained:

> "Here, the primary implication of excluding defendant's evidence concerns his right to present witnesses in his own defense. Thus, it appears that defendant's constitutional claim rests on his right to compulsory process under Article 1, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution. *Washington v. Texas*, 388 US 14, 23, 87 S Ct 1920, 18 L Ed 2d 1019 (1967) (holding that the federal compulsory process clause is incorporated in the Due Process Clause of the Fourteenth Amendment).

> "The right to compulsory process, under Article 1, section 11, of the Oregon Constitution, parallels federal Sixth Amendment jurisprudence. *Mai*, 294 Or at 272. Under the Sixth Amendment, a defendant's right to present witnesses is considered a fundamental element of the due process of law, *Washington*, 388 US at 19 and includes the right to have a jury hear the testimony of those witnesses, *Rock v. Arkansas*, 483 US 44, 55, 107 S Ct 2704, 97 L Ed 2d 37 (1987). However, compulsory process does not automatically trump other legitimate concerns and may, for example, be subjected to a state's established rules of evidence and procedure. *Chambers v. Mississippi*, 410 US 284, 302, 93 S Ct 1038, 35 L Ed 2d 297 (1973)."

OEC 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law." Had either the trial court or this court on direct appeal agreed with petitioner's argument that the excluded evidence was relevant, petitioner would have prevailed, assuming that he could demonstrate that the exclusion was prejudicial. In that light, we agree with the post-conviction court that a due process argument by either trial counsel or appellate counsel would not, in all likelihood, have resulted in this court, or the Supreme Court, reversing petitioner's convictions.[9] That is because petitioner's due process argument is, in essence, redundant of his arguments that the evidence was relevant under OEC 401. Defendant's due process rights do not trump the authority of the Oregon legislature to make irrelevant evidence inadmissable, and petitioner took the opportunity to urge that the evidence was relevant to his defense, both at trial and on appeal. We conclude therefore that, even if trial counsel and appellate counsel had raised a due process argument under the circumstance of this case, those arguments would have been no more successful than the arguments that he made under OEC 401 because they were, in substance, the same arguments.[10]

■        In his fourth assignment of error, petitioner argues that trial counsel should have presented additional evidence to demonstrate that petitioner's family owned the property on which the crimes occurred and that petitioner had permission to be on the property. Petitioner's theory at trial was that he believed he had no duty to retreat from his family's property and was acting in self-defense when he shot the victim. Petitioner reasons that, because all of the events leading to his prosecution took place on his family's property while he was alone with people who were trespassing, the failure to

---

[9] For purposes of petitioner's argument we presume, based on the law of the case, that the rulings that the evidence was not admissible were correct.

[10] Petitioner relies on two Ninth Circuit Court of Appeals decisions to support his position. Neither involves an inadequate assistance of counsel claim and we do not find them helpful, given the procedural posture of petitioner's post-conviction claims.

introduce the described evidence "totally undermined petitioner's credibility as a witness, substantially prejudiced petitioner's defense and warrants him being granted postconviction relief."

Petitioner and the witnesses to the shooting provided divergent testimony at trial about the events immediately before the shooting. But, according to many of the witnesses, petitioner was the aggressor. Based on that conflict in the evidence, petitioner concludes that

"[t]wo critical issues arise from the situation described above. First, because of the nature of the case, credibility was a key component to the defense. For the jury to acquit petitioner, it had to be persuaded that he was a truthful person. Second, explaining to the jury that petitioner did not have a duty to retreat (and was entitled to arm himself in defense) was an equally important component."

In response to petitioner's arguments, the postconviction court ruled that "[t]here was adequate evidence produced at trial that the property in question was owned by Petitioner's family. Additional evidence on the same issue would not have changed matters." The court explained,

"[T]he fact that Petitioner was on property owned by his family would not have provided legal justification for Petitioner to shoot and kill Rodman under the circumstances of this case. Petitioner claims no interest in the property involved, therefore, the fact that someone in his family owned the property gave him no special rights of self-defense that any other person on the property with permission would not have. Deadly force is not allowed against a mere trespasser. Petitioner would be justified in shooting Rodman only if he reasonably believed Rodman was committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person or was committing a burglary in a dwelling or was using or about to use unlawful deadly physical force against a person. ORS 161.219.[11] Producing more evidence regarding

---

[11] ORS 161.219 provides:

"Notwithstanding the provisions of ORS 161.209, a person is not justified in using deadly physical force upon another person unless the person reasonably believes that the other person is:

"(1) Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or

ownership of the property would not have changed the outcome of the trial."

(Record citations omitted.)

Petitioner challenges that reasoning on appeal, asserting that his trial counsel should have provided an expert who was familiar with maps, survey lines, and property lines, in order to show where the incident occurred in relation to the property lines and rights of way. He also argues that trial counsel should have called his father as a witness or provided an affidavit attesting as to where the property lines were and that petitioner had permission to be on the land.[12] We agree with the post-conviction court's reasoning. The issue before the jury, based on petitioner's asserted defense, was whether petitioner reasonably believed that deadly force was necessary. Under the applicable law, the fact that the state called into question his credibility on the issue of who owned the property on which the shootings took place had minimal impact on the overall

---

"(2)  Committing or attempting to commit a burglary in a dwelling; or

"(3)  Using or about to use unlawful deadly physical force against a person."

Likewise, ORS 161.225 provides limits for when deadly physical force is justified in defense of premises:

"(1)  A person in lawful possession or control of premises is justified in using physical force upon another person when and to the extent that the person reasonably believes it necessary to prevent or terminate what the person reasonably believes to be the commission or attempted commission of a criminal trespass by the other person in or upon the premises.

"(2)  A person may use deadly physical force under the circumstances set forth in subsection (1) of this section only:

"(a)  In defense of a person as provided in ORS 161.219; or

"(b)  When the person reasonably believes it necessary to prevent the commission of arson or a felony by force and violence by the trespasser.

"(3)  As used in subsection (1) and subsection (2)(a) of this section, 'premises' includes any building as defined in ORS 164.205 and any real property. As used in subsection (2)(b) of this section, 'premises' includes any building."

[12] At his deposition, petitioner was asked why the additional evidence would have made a difference. Petitioner answered:

"Because the District Attorney seemed to preclude me from using the—the ability to use physical force or a weapon on a place where I had the right to be because [trial counsel] failed to prove that, in fact, I was on my father's property. Because there was no expert testimony to corroborate where everything was in relation to the property lines."

question of the reasonableness of his conduct and his assertion of self-defense. Petitioner was armed with a loaded semi-automatic rifle in his confrontations with Rodman, who carried a large stick during the first confrontation. By the time of the shooting, Rodman was, by all accounts, unarmed. The jury could have believed everything petitioner testified to, including his testimony about family ownership of the property, and still have found that, by shooting 23 rounds at Rodman, he acted with unreasonable force. In sum, petitioner failed to demonstrate that the failure of his trial counsel to provide corroborating evidence to his testimony regarding the property ownership would have had a tendency to change the outcome of the trial or that there was a reasonable probability that the jury would have returned a different verdict but for that failure.

Affirmed.